## De Pontalba v. The City of New Orleans.

A donation made to a city of a hospital, which recites that it was made "para que se puedan recoger los leprosos que hay actualmente en gran numero, y el publico goze de este beneficio perpetuamente, a cuyo efecto desde ora para siempre hace donacion en forma, renunciando todo derecho que tenga y pueda tener a dichos edeficios y tierra que lleva bajo de los referidos linderos," is a donation *sub modo*, and not a conditional donation, and the donees may, without forfeiting the donation, apply the property to another object than that contemplated by the donor. *Per Curiam :* There is a material difference between the motives which the donor mentions as being the cause of his liberality, and the conditions he imposes. The failure of a condition annuls the donation, but it remains valid although the motives expressed as the cause of it be untrue.

A donation made for the erection of an hospital, being a liberality *por obra piadosa*, cannot be revoked for a failure to comply with the charge or condition on which it was made, unless the donor has so provided expressly.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J.

*Soulé*, for the plaintiff. The donation was a conditional one, and the non-compliance with the condition entitles the plaintiff to recover the property.

"Maguer que qualquier home que diere alguna cosa á otre, no gela pueda despues toller, pero....si gelo dió por alguna cosa facer, y no gelo fizo: por estas cosas, ò por cada una de ellas, el que dió las cosas pueda las toller à aquel à quien las dió." Fuero Real, lib. 3, tit. 12, p. 212.

"Por cierta cosa, e por señaladas razones se mueuen los omes à las vegadas, à fazer donaciones à otros ; quo si por ellas no se mouiessen, por auentura non farian las donaciones. E esto seria, como si un ome diesse à otro marauedis, o alguna eredad, diziendo señaladamente, quando se faze la donacion, que lo da, porque este el otro todavía guisado de cauallo, e armas, para fazerle seruicio ; dixesse abiertamente, que gelo daua por alguna lauor o seruicio que le fiziesse. E porende dezimos, que si aquel que rescibiere la donacion en la manera sobre-dicha, cumple la conuenencia, o la postura, o faze aquello porque gelo dieron, vale el donadio en todas guisas. E si non lo cumple, o non lo faze bien, puede apremiarle que cumpla lo que prometio de fazer, o que desampare la donacion que le fizo." Partida 5, tit. 4, ley 6, p. 739.

"Donations are liable to be revoked for the non-performance of the condiiton imposed upon the donee. Code of 1808, p. 222, art, 66. C. C. art. 1546.

*Preaux*, for the appellants.

The judgment of the court was pronounced by

Rost, J. The plaintiff seeks to annul a donation made by her father to the Ayuntamiento of New Orleans, on account of the inexecution of the conditions alleged to be attached to it. There was judgment for her in the court below, and the defendants have appealed.

On the 20th of April, 1785, *Don André Almonaster y Roxas*, the father of the plaintiff, made to the Ayuntamiento of the city of New Orleans, a donation, in these words :

"*Don Andres Almonaster y Roxas* puesto a su obediencia, con todo respeto dice : que ha fabricado un hospital para lazarinos con cuarto separaciones capaz de aloxar otras familiàs blancas, y separamente, otro con el mismo aloxamiento para la gento de color. Todo a su costa, en el estremo de una de sus haciendas de campo, immediata a esta cuidad como dos tiros de fusil, lindando con las tierras de *J. Curtidos* por un lado, y por el otro con una canal que se ha hecho para el baño de los infermos, que servira de linderos a dichos hospitales ; los que dedica a vms. Graciosamente para que se puedan recoger los leprosos quo hay actualmente en gran numero, y el publico goze de este beneficio perpetuamente, a cuyo efecto desde ora para siempre hace donacion en forma, renunciando todo derecho qua tenga y pueda tener a dichos edificios y tierra que lleva bajo de los referidos linderos."

The donation was accepted unconditionally, and the Ayuntamiento proceeded to take possession of the property, and to apply it to the use contemplated by the donor. Up to 1805, lepers were admitted in the hospital. After that period it was abandoned, and became the refuge of the Indians, who, after some years, set fire to it and burned it down. The ground then ceased to be used for any purpose, till 1833, when the city council passed an ordinance converting it into a cemetery. This change of destination gave rise to the present controversy.

The plaintiff contends that the donation is a conditional one ; that the city had no right to apply the property to any other object than that contemplated by the donor ; and that, by their doing so, the donation has been avoided, and the property has reverted to her as sole heir, of the donor. The defendants deny the plaintiff's allegations, not specially admitted, and further answer that, by their continued possession of the property under the donation, the title was vested in them absolutely, and they had the right to apply the said property to any public purpose they might think proper.

After this suit had been pending some years, the parties to it entered into a written agreement by which the property was to be sold, and its proceeds deposited in bank, subject to the final decision of the court. The property was accordingly sold, and the only question now presented is, to which of the parties the procceeds of the sale belong.

We take this donation to be a donation *sub modo*. The laws cited by the plaintiff's counsel from the Fuero Real and the Partidas were undoubtedly the general rules on the revocation of donations; but those rules were liable to many exceptions, and, in applying them, regard must be had to the distinction made by the civil and the spanish laws between the mode or charge and the condition. The inobservance of the condition often avoided the donation, when the inexecution of the charge did not.

Thus says Pothier : " If the charge on which the bequest is made, is not in itself impossible, but fails before the legatee has been put *in mora*, his obligation to execute it ceases, and the legacy is due. For instance, a testator has given me a legacy, and charges me to be tutor of his children; if the judge, on the advice of the family, has appointed another tutor, as I can no longer be appointed, I am liberated from the charge, and entitled to the legacy. In such a case, the legacy made *sub modo*, differs from that made under the condition, *if he is tutor of my children*." Pothier, des Testaments, Donations, etc., no. 114.

Merlin, deriving the doctrine on the subject from the roman law, says that a material difference must be made between the motives which the donor mentions as being the cause of the liberality, and the conditions he imposes ; because, although the failure of a condition annuls the donation, it remains valid, although the motives therein expressed be untrue. Merlin, Répert. verbo Donations, sec. 6, no. 5. See also (39. 4.) D. 5 de Donationibus.

The same distinction, also drawn from the civil law, is recognized by the english courts. The rule there is that, where a legacy is bequeathed for a particular purpose, it is not conditional, so as to fail with the purpose for which it is given. Thus, a legacy made to a woman for the maintenance of her children, has been held valid notwithstanding she has no children, or they all die. So also, where lands were given to a mother for the education and maintenace of her daughter till eighteen years old, and the daughter died under eighteen, it was adjudged a good term to the mother till the daughter would have obtained eighteen years, had she lived. Ward on Legacies, no. 142, and cases there cited. (8 Law Library.)

Delvincourt and Duranton, upon whose authority the opinion of the court below rests, were misunderstood by the learned judge. We perceive no material difference between the opinion of Delvincourt and those of Merlin and Pothier. Duranton, if his authority was so decided as the judge supposes it to be, ought not to prevail against those three commentators. But he does not greatly differ from them. He merely says that, when a donation is made *ob rem futuram*, it is a mode affixed to the liberality, and when the motive fails the validity of the donation depends upon the intention of the donor to be deduced from the act. 8 Duranton, no. 548.

If there were still persons afflicted with leprosy when the hospital ceased to be kept up, the city authorities could no longer compel them to resort to it : and as it is not shown that any applied for admission, we must presume that the purpose of the donation failed. After its failure, the intention of the donor is immaterial. If the liberality was not made solely and exclusively for the use mentioned in the act, even according to Duranton, it did not fail with the pur-

pose for which it was given. If, on the other hand, it was made exclusively DE PONTALBA
for an hospital, it was a liberality *por obra piadosa*, and is governed by another NEW ORLEANS.
exception to the general rule invoked by the plaintiff. That exception is laid
down with great precision in 2d Febrero Novissimo, p. 93.

"Habiendo hablado de las donaciones propias ó puros, y causas por que
pueden revocarse, resta decir algo· sobre las impropias y condicionales, pues
aunque la regla general y casi invariable es el quedar revocadas desde el momento
que deja de cumplirse la condicion, modo ú objeto que para su estabilidad dis-
puso el donante, hay casos y circunstancias en que no se observa rigurosamente.
Asi las que se hacen en favor de iglesia, *hospital*, ú otra obra piadosa, no queda-
ran revocadas por falta del cumplimiento de la carga ó condicion con que se
otorgaron, á menos que expresamente lo haya dispuesto el donante."

Unless the right of return, in case of the inexecution of the mode, charge, or
condition, be expressly stipulated in the act, these donations are irrevocable.
The act in this case contains no such stipulation. The legal, as well as the
apparent title, was in the defendants at the time of the sale, and the plaintiff has
failed to make out her right to recover the proceeds of it.

It is, therefore, ordered that, the judgment in this case be reversed, and that
there be judgment for the defendants, with costs in both courts.