273 So.2d 552 (1973)
ADA C. POLLOCK-BLUNDON ASSOCIATION, INCORPORATED
v.
HEIRS of Mary M. EVANS et al.
No. 9164.
Court of Appeal of Louisiana, First Circuit.
February 1, 1973.
*553 Cordell H. Haymon, Baton Rouge, for appellant.
Charles W. Roberts, Burton & Roberts, Anthony J. Bonfanti, Baton Rouge, for the missing heirs.
Before LOTTINGER, ELLIS and CRAIN, JJ.
ELLIS, Judge:
Plaintiff Ada C. Pollock-Blundon Association, Incorporated, is a non-profit corporation which was organized for the purpose of maintaining and operating a school and home for Negro children. Over the years, the nature of its operation has changed, and today it operates a home for children referred to it by the Family Court for the Parish of East Baton Rouge.
In 1937, while the school and home were being operated, it received a donation from Alice A. Evans and Mary M. Evans of an undivided 7/12 interest in a tract of land in East Baton Rouge Parish. The donation was made subject to the following conditions:
"A part of the consideration of this sale is that the interest in said above described lands herein conveyed by the vendors to the purchaser, and the land that shall be taken and received by said purchaser, if and when said purchaser shall partition said land in kind with its co-owner or co-owners, shall be named and known as `The Olin Hetser Evans Memorial Plantation for Colored Children,' and said property shall be farmed by colored children, and the acreage is not to be dimished (sic), and no part of the property is ever to be mortgaged or encumbered in any manner whatsoever."
*554 On November 21, 1938, by act of partition with its co-owner, plaintiff acquired full ownership of 123.12 acres of land in Sections 53 and 70, Township 6 South, Range 1 East. Thereafter, the said property was, in fact, farmed by the children in the home, on a part time basis, until about 1950, when the entire tract was leased to Thomas F. Wallace for agricultural purposes. This lease remained in effect until 1970, when it expired. No farming operations have been conducted on the property by the children since the time of the lease.
The property has become quite valuable, being worth over $300,000.00, and, because of the change in the nature of their operation and the social changes which have occurred since the time of the donation, plaintiff now wishes to sell or lease the said property without restriction to use the funds for the furtherance of its present operation.
To this end, it has brought this suit under the provisions of R.S. 9:2331, asking that the court apply the cy pres doctrine so as to free the property from the said conditions and restrictions. Pursuant to the provisions of R.S. 9:2332, service was made on the heirs of the donors through the Attorney General of Louisiana, who attempted to notify the heirs of this action. At the trial, an attorney appeared on behalf of the heirs.
After trial on the merits, the court, applying the cy pres doctrine under R.S. 9:2331 et seq., decreed that the property could be sold or leased free from the conditions imposed by the donation, and made certain provisions relative to the manner in which the proceeds of such sale or lease might be utilized. From this judgment, an appeal has been taken on behalf of the heirs.
In this court, the defendant heirs claim that the cy pres doctrine is not applicable to inter vivos donations made prior to 1970, and that this case does not present a proper set of circumstances for its application.
R.S. 9:2331 et seq., which statutorily creates the cy pres doctrine, was originally adopted in 1954, and at that time applied only to donations mortis causa. In 1970, it was amended so as to extend its provisions to conditional donations inter vivos when the donor is deceased. It provides, in effect, that when circumstances have changed since the making of a conditional donation inter vivos for charitable, educational or eleemosynary purposes, and the donor is deceased, and the change is such as to render compliance with the conditions "impractical, impossible or illegal", the court may direct that the said donation be administered in a manner consistent with the general purpose thereof, and free from the said conditions.
Prior to 1954, the cy pres doctrine had appeared in our jurisprudence in various guises. See State v. Executors of McDonogh, 8 La.Ann. 171 (1953); Succ. of Vance, 39 La.Ann. 371, 2 So. 54 (1887); de Pontalba v. New Orleans, 3 La.Ann. 660 (1848).
Defendants contend that the cy pres doctrine has been applied only to donations mortis causa prior to 1970, and that it cannot be applied to a donation inter vivos made prior to that time. They allege that to do so would constitute an unconstitutional destruction of their vested rights. They claim that the 1970 amendment to R. S. 9:2331 is substantive in nature and cannot be given retroactive effect.
We cannot agree with this contention. We are of the opinion that R.S. 9:2331 et seq. are procedural and remedial in nature, and were intended by the legislature to provide a vehicle for correcting the type of situation which is presented by this case. See Bonner v. Board of Trustees, 181 So.2d 255 (La.App., 4 Cir. 1965). We might also point out that no rights relative to this property are vested in the defendants. There can be no resolution of the donation for non-compliance with the conditions. The liberative prescription of ten years can be pled to the charge of non-compliance *555 with the condition that the property be farmed by colored children, under Article 1567 of the Civil Code, which provides:
"An action of revocation or rescission of a donation on account of the non-execution of the conditions imposed on the donee, is subject only to the usual prescription, which runs only from the day that the donee ceased to fulfill his obligations."
The two other conditions, which prevent the sale or mortgage of the property, are contrary to public policy of the State and must be considered as not written. Either of these provisions would effectively take the property out of commerce. See Succession of Rogers, 138 So. 2d 251 (La.App., 4 Cir. 1962), and authorities cited therein.
We are, therefore, of the opinion that the provisions of R.S. 9:2331 et seq. are applicable to this case, and that the district court has the authority to free the property involved from the conditions imposed in the donation.
Turning now to the question of the propriety of the action of the district court in relieving the donation of its conditions, we note first that it is not claimed that compliance with the conditions is illegal or impossible. We are dealing solely with the question of impracticality.
The testimony in the case indicates that opportunities for Negroes have increased many fold since 1937, and that they have made spectacular advances both socially and educationally. It may very well be that at the time of the original donation, there was great value in training in agricultural pursuits. This is no longer the case. Plaintiff has further shown that there is little likelihood that operation of the farm by the children in the home could be done profitably. It is shown that the highest and best use of the property is for residential, rather than agricultural, purposes.
We conclude that it is indeed impractical to carry out the original condition imposed relative to cultivation of the property by colored children. As noted above, the other conditions are regarded in law as not written. It is clear that the basic intention of the donors in the orginal donation was to assist the plaintiff in bettering the condition of children, and that this intent can be best carried out, in the light of present circumstances, by permitting the sale or lease of the property, free from all restrictions and conditions, and the application of the funds derived therefrom to the furtherance of the present aims of the plaintiff.
The judgment appealed from is therefore affirmed. All costs are to be paid by plaintiff.
Affirmed.